**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Mistelle S.,<br><br>             Plaintiff,<br><br>v.<br><br>Andrew Saul,<br>Commissioner of Social Security,<br><br>             Defendant. | Case No. 19-cv-01153 (SRN/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mistelle S. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). The matter is now before the Court on the parties' cross-motions for summary judgment [Doc. Nos. 12, 14]. For the reasons set forth below, the Court recommends denying Plaintiff's motion and granting Defendant's motion.

**I.     Procedural Background**

Plaintiff filed an application for DIB on July 29, 2016, alleging a disability onset of her date of birth, which she later amended to February 4, 2016. (R. 10, 35 [Doc. No. 11].[1]) She claimed to be impaired by rheumatoid arthritis, fibromyalgia, degenerative hip disease, a slow functioning heart, low oxygen in her blood, and post-

---
[1] "R" references the Social Security Administrative Record.

traumatic stress disorder (PTSD). (R. 290.) Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). The ALJ convened a hearing on June 18, 2018, at which Plaintiff and a vocational expert testified. (R. 10.)

On September 12, 2018, the ALJ issued a written decision denying Plaintiff's DIB application. (R. 10–21.) Pursuant to the five-step sequential process outlined in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since February 4, 2016. (R. 12–13.) At step two, the ALJ determined that Plaintiff had severe impairments of fibromyalgia and lumbar degenerative disc disease. (R. 13.) The ALJ also discussed Plaintiff's depression and anxiety, which he concluded to be non-severe impairments that caused only mild limitations. (R. 13–14.) The ALJ did not, at step two, discuss Plaintiff's other claimed impairments, including rheumatoid arthritis. At the third step, the ALJ found that none of Plaintiff's impairments, considered singly or in combination, met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 14.)

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC")[2] to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the

---

[2] An RFC assessment measures the most a person can do, despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The RFC assessment actually occurs between steps three and four of the sequential evaluation, but for ease of reference, the Court will refer to the RFC assessment as part of step four.

following restrictions: lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and walking for about six hours in an eight-hour workday; occasionally stooping or climbing ladders, scaffolds, ropes, ramps and stairs; and frequent overhead reaching, handling, and fingering. (R. 14–15.) With this RFC, the ALJ concluded, Plaintiff was capable of performing past relevant work as a bartender, as well as other jobs that exist in significant numbers in the national economy. (R. 18–20.) Consequently, the ALJ determined that Plaintiff was not disabled. (R. 20.)

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this action for judicial review.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig*

*v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove her disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III.   Discussion

#### A.   Plaintiff's Rheumatoid Arthritis Diagnosis

##### 1.   The ALJ's Consideration of Plaintiff's Rheumatoid Arthritis Diagnosis at Step Two

Plaintiff argues that the ALJ's failure to assess Plaintiff's diagnosis of rheumatoid arthritis[3] at step two of the five-step analysis amounts to reversible error. At step two, the

---

[3] Rheumatoid arthritis is an autoimmune disease that manifests primarily through pain and swelling in a person's joints, commonly the hands and wrists. *Rheumatoid Arthritis*,

claimant must show she has an impairment that significantly limits her ability to work in most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). That is, the impairment must have "more than a minimal effect on the claimant's ability to work." *Id.* A claimant's "age, education, and work experience" are not relevant to the step two inquiry. *See* 20 C.F.R. § 404.1520(c). Rather, "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4 (S.S.A. 1985). The severity showing "is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708 (citations omitted).

On August 11, 2015, Plaintiff was seen by Dennis Sollom, MD, for "complaints of back pain and radiation of pain to the legs, but also widespread pain." (R. 392.) She reported having "aching muscles and joints," but had "good functional active range of motion through the major joints of all limbs" and "no significant joint deformities." (R. 395.) Dr. Sollom noted that Plaintiff had "no significant pain with compression of the metacarpal heads and there did not appear to be any active synovitis or joint effusions in any of the finger joints." (R. 396.) Dr. Sollom concluded Plaintiff "probably" had fibromyalgia and contemplated referring Plaintiff to a rheumatologist on that basis.

---

Ctr. for Disease Control (May 12, 2020) https://www.cdc.gov/arthritis/basics/rheumatoid-arthritis.html.

5

(R. 397.)  He also ordered a series of exams, including a connective tissue disease cascade.  (R. 397.)  When the results from those tests came in, Dr. Sollom notified Plaintiff that the connective tissue cascade showed Plaintiff had an elevated number of CCP antibodies, which "could be compatible with rheumatoid arthritis."  (R. 392–93.)

On November 13, 2015, Plaintiff saw rheumatologist Joseph Sleckman, MD, "for an opinion concerning her positive antibodies to CCP and her fibromyalgia."  (R. 382.)  Although Plaintiff reported that she had "been having pain in her joints and muscles for a couple of years," Dr. Sleckman observed "no swollen or tender joints today" with "no evidence of hypermobility and there is normal range of movement of the joints."  (R. 382–83.)  Dr. Sleckman reported his impression that Plaintiff had fibromyalgia and "weakly positive antibodies to CCP," and concluded "[t]here is no good evidence for rheumatoid disease that I can see with the antibodies, even though she has antibodies to CCP."  (R. 383.)  He went on, however, to recommend Plaintiff try the medication sulfasalazine, saying "[w]e may be dealing with an occult form of rheumatoid disease."  (R. 383.)

Plaintiff had a follow-up visit with Dr. Sleckman on February 23, 2016, in which she reported that her joints continued to hurt, and the sulfasalazine had "not made much of a difference so far."  (R. 380.)  Dr. Sleckman observed that Plaintiff had "tenderness in all the joints," "pain with movement of the shoulders and hips," and "some hypermobility at the fingers."  (R. 380.)  Dr. Sleckman concluded that "[g]iven that [Plaintiff] has pain in the joints and these weakly positive antibodies," her dosage of sulfasalazine should be increased, and she should be seen again in four months.  (R. 380.)  The record does not

reveal that Plaintiff ever had another appointment with Dr. Sleckman, although in September 2016 she called asking for a referral to the pain clinic at Sanford Health. (R. 581.)

On December 12, 2016, Plaintiff was seen by Ann Safo, DO, at Sanford Health. (R. 591.) At that visit Dr. Safo's impression was that Plaintiff had fibromyalgia and "[r]heumatoid arthritis involving multiple sites, unspecified rheumatoid factor presence," among other things. (R. 591.) Dr. Safo prescribed a new medication for Plaintiff's fibromyalgia, Lyrica (pregabalin) (R. 592, 625), and manipulated Plaintiff's spine and pelvis, but did not prescribe treatment for rheumatoid arthritis. Plaintiff saw Dr. Safo in June 2017, although rheumatoid arthritis was apparently not addressed during that visit (R. 625), and again in October 2017 in order to obtain a letter for Plaintiff's employer requesting that Plaintiff "be able to use her pain salve and have frequent breaks" (R. 638).

The ALJ did not reference a diagnosis of rheumatoid arthritis in his assessment of Plaintiff's severe impairments. Instead, the ALJ determined that Plaintiff had severe impairments of fibromyalgia and lumbar degenerative disc disease, and discussed Plaintiff's depression and anxiety, which he concluded to be non-severe impairments that caused only mild limitations. (R. 13–14.)

The Court begins by noting that Plaintiff bears the burden of establishing the severity of her impairments (*Kirby*, 500 F.3d at 707–08), and an impairment is not the same thing as a diagnosis (20 C.F.R. § 404.1521). The Court also notes that the record is mixed as to whether Plaintiff was ever diagnosed with rheumatoid arthritis. Certain of Plaintiff's medical records seem to document a diagnosis for rheumatoid arthritis, but

7

little treatment, and few, if any, support a finding that Plaintiff experienced work-related limitations on account of it. "[D]iagnoses alone are insufficient to establish their severity at Step Two." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007); *see also Buol v. Saul*, Case No. 19-cv-52-LRR-KEM, 2020 WL 2172300, at *4 (N.D. Iowa Apr. 20, 2020) ("[A] diagnosis . . . is insufficient to establish it as a medically determinable impairment."). Even if Plaintiff had adequately established that she had been diagnosed with rheumatoid arthritis she would still not have carried her burden to show that the ailment significantly limited her ability to do basic work activities. 20 C.F.R. § 404.1520(c).

Moreover, even assuming the ALJ's failure to discuss rheumatoid arthritis in his step two analysis was error, the Court would still need to resolve whether such error was harmless. Citing *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2019) and *Gregory v. Comm'r Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018), Plaintiff contends that failure to assess a distinct and diagnosed impairment at step two requires reversal. (Pl.'s Mem. Supp. Mot. Summ. J. at 10–11 [Doc. No. 13].) The Commissioner responds that any error at step two is harmless because the ALJ found that Plaintiff suffered from other severe impairments, and "[a]s long as the ALJ finds at least one severe impairment, the ALJ may not deny benefits at step two and must proceed to the next step, as the ALJ did here." (Def.'s Mem. Supp. Mot. Summ. J. at 7).

An error at step two in failing to assess a claimed severe impairment "is harmless if the claimant 'makes a threshold showing of any "severe" impairment [and] the ALJ continues with the sequential evaluation process and considers all impairments, both

8

severe and non-severe.'" *Snyder v. Colvin*, No. 12-cv-3104 (MJD/JJK), 2013 WL 6061335, at *9 (D. Minn. Nov. 18, 2013) (quoting *Bondurant v. Astrue*, No. 09-cv-328 (ADM/AJB), 2010 WL 889932, at *2 (D. Minn. Mar. 8, 2010)); *accord Lund v. Colvin*, 13-cv-113 (JSM), 2014 WL 1153508, at *27 (D. Minn. Mar. 21, 2014); *Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-1268 (JRT/SER), 2012 WL 4328413, at *21–22 (D. Minn. July 11, 2012), *R. & R. adopted*, 2012 WL 4328389 (D. Minn. Sept. 20, 2012); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010). "The same reasoning applies even if an ALJ fails to discuss whether certain impairments are severe or non-severe at the second step (which is the case here), as long as the limitations caused by these impairments are adequately assessed later in the process." *Misty G. v. Berryhill*, Case No. 18-cv-00587-KMM, 2019 WL 1318355, at *4 (D. Minn. Mar. 22, 2019); *accord Camie P. v. Berryhill*, Case No. 18-cv-1401-ECW, 2019 WL 2644256, at *5 (D. Minn. June 27, 2019). It follows that an error at step two "cannot be dismissed as harmless if the RFC finding [at step four] omits the claimant's relevant functional limitations." *Misty G.*, 2019 WL 1318355, at *4. Accordingly, the Court moves to consider whether the ALJ adequately addressed all of Plaintiff's functional limitations in his step four analysis, even if he did not explicitly attribute them to rheumatoid arthritis.

### 2. The ALJ's Consideration of Plaintiff's Rheumatoid Arthritis in the RFC Assessment at Step Four

Plaintiff contends the ALJ failed to incorporate restrictions related to her rheumatoid arthritis diagnosis in his assessment of Plaintiff's RFC at step four. (Pl.'s Mem. Supp. Mot. Summ. J. at 12.) Specifically, Plaintiff faults the ALJ for determining

9

that she could reach overhead, handle, and finger on a frequent basis, which Plaintiff believes fails to account for her true limitations in handling and fingering. (*Id.* at 12–13.) Plaintiff testified that she struggles to lift her arms above her head, such as when she is washing her hair, and to manipulate her fingers, such as when she is buttoning a button or opening a plastic bag. (R. 54, 69.) She reported that her hands "cramp up," which she attributed to rheumatoid arthritis, and are in "constant pain," which she attributed to fibromyalgia, although she stated that it was sometimes difficult to differentiate which ailment caused which symptom. (R. 50, 69.)

Plaintiff argues the ALJ did not properly evaluate and take into account her subjective testimony. (Pl.'s Mem. Supp. Mot. Summ. J. at 14.) The Court disagrees. The ALJ specifically addressed Plaintiff's subjective experience but concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. 16.)

While a claimant's testimony about her limitations must be given due consideration, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). In evaluating what weight to give a claimant's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and

10

aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Here, the ALJ recounted Plaintiff's description of the limitations she experiences in attending to the activities of daily living, and noted where Plaintiff's medical records were consistent with her subjective assessment of her symptoms.  (R. 16–17.)  However, he also pointed to instances in which the medical evidence revealed Plaintiff was "in no acute distress," "had 5 of 5 strength," "had no gross motor deficits," and required only "limited and conservative [medical] treatment."  (R. 16–17.)  In addition, he pointed out that Plaintiff had not been participating in yoga or swimming, despite her providers' recommendations that those activities would be helpful.  (R. 17.)  And he found that Plaintiff's "sporadic work history erodes the probative weight of her allegations." (R. 17.)  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003); *see also Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.")

Furthermore, although the ALJ only references Plaintiff's rheumatoid arthritis in passing (R. 15), the Court disagrees that he failed to consider limitations that might be attributable to it.  The ALJ began his analysis by explicitly noting that he understood his obligation to consider "all of the claimant's impairments, including impairments that are

11

not severe." (R. 12.) "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). "An ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).

Plaintiff offered no medical opinion as to the limitations she experiences because of rheumatoid arthritis. And although some of Plaintiff's medical records document joint pain in her hands and arms (*e.g.*, R. 380, 572), plenty of others from the relevant time frame do not (*e.g.*, R. 383, 594–95, 618–19, 625–26, 637, 641). The medical records therefore support the ALJ's conclusion that Plaintiff's subjective assessment of the limiting effects of her ailments was not consistent with the evidence in the record.

In addition, the ALJ's determination is supported by the evaluations of Marcus Fiechtner, M.D., and Thomas Christianson, M.D., both state agency physicians who reviewed Plaintiff's medical records. Both Dr. Fiechtner and Dr. Christianson concluded that Plaintiff should be limited to lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently, as the ALJ determined. (R. 80, 93–94.) Importantly, they also both concluded that Plaintiff did not have *any* manipulative limitations. (R. 81, 94.) In that respect, the ALJ's RFC was therefore more accommodating than the state agency physicians' recommendations.

Finally, the Court concludes the ALJ *did* account for Plaintiff's limitations in her hands and arms. The ALJ noted that Plaintiff's connective tissue disease cascade test in August 2015 "was interpreted to show a positive result" and that in June 2016 her "PIP

12

joints appear[ed] to have a little synovial thickening."[4]  (R. 16–17.)  He specifically elaborated on the difficulty Plaintiff experiences in grocery shopping, driving a car, and attending to her personal care (R. 15–16)—all limitations Plaintiff described in her testimony about the limitations in her hands and arms (R. 53–54).  As previously discussed, however, the ALJ also took into account that Plaintiff's medical records showed "5 of 5 strength," and as well as "limited and conservative treatment with non-compliance with recommendations to engage in physical activity such as yoga and swimming."  (R. 16–17.)  The RFC's limitation to light work (requiring no more than frequent[5] handling, fingering, and overhead reaching, occasionally lifting and carrying up to 20 pounds, and frequently lifting and carrying up to 10 pounds) appropriately reflects these findings.  (R. 14–15.)

In sum, the Court concludes the RFC is supported by substantial evidence in the record as a whole and properly accounts for the limitations Plaintiff experiences on account of fibromyalgia and/or rheumatoid arthritis.  Accordingly, even if the Court concluded the ALJ erred at step two (which the Court does not), there was no error at step four.  Therefore, the Court recommends that Plaintiff's motion be denied and the

---

[4] "The synovium, in normal joints, is a thin delicate lining that serves several important functions. . . . Normally, this layer is only 1-3 cells thick.  In [rheumatoid arthritis], this lining is greatly hypertrophied (8-10 cells thick)."  *RA Pathophysiology*, Johns Hopkins Arthritis Center (May 15, 2020) https://www.hopkinsarthritis.org/arthritis-info/rheumatoid-arthritis/ra-pathophysiology-2/.

[5] In the context of Social Security disability cases, the term "frequent" is defined as "occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL 31251, at *6.

Commissioner's motion granted on the question of the ALJ's assessment of Plaintiff's rheumatoid arthritis.

### B.     Plaintiff's Mental Impairments

In his step two analysis, the ALJ determined that Plaintiff's depression and anxiety were non-severe because they caused only minimal limitation in Plaintiff's ability to perform basic mental work activities. (R. 13.) *See* 20 C.F.R. § 404.1522(a). The ALJ considered Plaintiff's mental impairments by reference to the "four broad areas of mental functioning set out in the disability regulations," commonly known as the "paragraph B" criteria: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (R. 13–14.) 20 C.F.R. § 404.1520a(c)(3). The ALJ evaluated the four areas by rating the degree of Plaintiff's limitation using a five-point scale: none, mild, moderate, marked, and extreme. (R. 13–14.) 20 C.F.R. § 404.1520a(c)(4). On all four factors, the ALJ concluded Plaintiff's impairments caused only a mild limitation, making them "non-severe" for purposes of step two. (R. 13–14.) Plaintiff implies (but does not explicitly say) that her limitations should have been rated higher based on the psychological evaluation conducted by Jay Phillippi, Ph.D., and the evidence in her medical records. (Pl.'s Mem. Supp. Mot. Summ. J. at 15–16.)

Plaintiff was referred by the Social Security Administration to Dr. Phillippi for an examination of her mental status and activities, which was done on November 1, 2016. (R. 585.) Based on his examination of Plaintiff and review of her medical records, Dr. Phillippi concluded Plaintiff had "adequate capacity for abstract thought but was

easily distracted or confused," had a poor prognosis "given the length of history of her problems and untreated symptoms," and "may continue to lack optimal capacity to sustain adequate employment." (R. 586–87.) Dr. Phillippi further opined,

> [Plaintiff] demonstrates an inadequate fund of psychological skill and capacity to maintain mood and interpersonal effectiveness. . . . She has a tendency towards avoiding others, feeling depressed and anxious, and losing pace, persistence, organization, and ability to complete tasks. She is unlikely to be successful at other than minimal and entry level tasks with limited hours and pace.

(R. 587.) The ALJ acknowledged Dr. Phillippi's opinion at step four of his analysis, but afforded it little weight because it was not supported by the evidence of record, including Plaintiff's lack of consistent mental health treatment and evidence that Plaintiff's mental impairments largely did not interfere with her "activities of daily living." (R. 18.)

An ALJ may discount a medical opinion if it is inconsistent with other substantial evidence in the record. *See Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005). Although Plaintiff's records are replete with references to her diagnoses for depression and anxiety (*e.g.*, R. 618, 623–24, 629), the file contains few indications that Plaintiff sought treatment for those conditions. For example, Plaintiff's medical records indicate that she occasionally was prescribed various medications for anxiety and depression between 2008 and 2015 (*e.g.*, R. 409, 416, 440, 442, 448, 549), but not thereafter (*e.g.*, R. 382, 566, 572, 601, 606, 619–20), even though Plaintiff's healthcare providers contemplated prescribing them (R. 571, 618, 629).[6] Plaintiff and/or her providers also

---

[6] Some of Plaintiff's later records reflect that she was prescribed Clonazepam on December 10, 2015 and instructed to take it "as needed for Anxiety." (*E.g.*, R. 583.) There is no indication in Plaintiff's files that she was actively taking the Clonazepam,

15

considered numerous non-pharmacological treatments for her mental illnesses and her fibromyalgia (such as therapy, yoga, or acquiring a companion pet), but the record reflects that those modalities were largely not pursued. (R. 415, 571, 618–19, 629.) Once, on June 20, 2017, Plaintiff saw Jennie Cornell, LICSW, for therapy for depression and anxiety. (R. 629.) Plaintiff agreed to return in two weeks (R. 630), but there is no indication she ever did (R. 638).

The record is also largely devoid of specific information as to how Plaintiff's anxiety and depression impaired her daily life. As discussed above, a diagnosis of an ailment, standing alone, is insufficient to show the effect of that ailment on a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521; *Salles*, 229 F. App'x at 145. Instead, Plaintiff's burden was to show that her conditions resulted in specific work-related functional limitations. *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) ("[T]he ALJ properly focused on the functional limitations caused by those difficulties."). But in the period leading up to and after the alleged onset date, Plaintiff's care providers regularly documented that Plaintiff's mental health was fine. (*E.g.*, R. 387 ("Mental status – awake, alert, oriented and appropriate"); 404 ("She has a normal mood and affect"); 417 ("Mental status normal; no psychiatric issues"); 641 (finding her judgment and insight were "intact" and she had "no depression, anxiety").) And although Plaintiff's mental illnesses were often listed among her active diagnoses, they were

---

such as evidence that she sought refills of the prescription or discussed its effectiveness with her providers. It eventually disappears from her medication list. (*E.g.*, 601, 606, 619.)

16

frequently not the focus of her treatment, or even discussed at all. (R. 565–66, 625–28, 638–41.) Plaintiff also specifically testified that her anxiety and depression were not a problem for her in January 2017—after the alleged onset date of disability (R. 41).

The ALJ's rating of Plaintiff's limitation is also supported by the assessments of the state agency psychologists. An ALJ must consider evidence from non-examining consultants under 20 C.F.R. § 404.1527, as such "consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). Plaintiff's files, including the evaluation by Dr. Phillippi, were first reviewed by Harold Hase, Ph.D, in November 2016. Dr. Hase concluded Plaintiff had "mild" restrictions of activities of daily living, a "mild" difficulty in maintaining social function, "mild" difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. 79.) Upon reconsideration, Plaintiff's files were reviewed by Ed Kehrwald, Ph.D., in March 2017. Dr. Kehrwald's conclusions were identical to the ALJ's on all four "paragraph B" criteria, except that Dr. Kehrwald determined Plaintiff had "moderate" limitations in her ability to concentrate, persist, or maintain pace, whereas the ALJ concluded Plaintiff had only "mild" limitations. (R. 92.) Even so, Dr. Kehrwald's findings supported the reconsideration determination that Plaintiff could perform light work. (R. 97.)

The regulations provide that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council

17

levels of administrative review." SSR 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996).

> Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. For example, State agency medical and psychological consultants and other program physicians and psychologists may offer findings about the existence and severity of an individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *6 (S.S.A. Mar. 16, 2016). Although an ALJ generally must give more weight to the medical opinion of an examining source than to the medical opinion of a non-examining source, 20 C.F.R. § 404.1527(c)(1), that is not always the case, *see* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

In such a situation, it is the ALJ—not this Court—who is "charged with the responsibility of resolving conflicts among medical opinions." *Finch*, 547 F.3d at 936. There is no requirement that the ALJ's RFC findings be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ evaluated the conflicting evidence in the record and determined that "the claimant is no more limited than established by the above residual functional capacity assessment as supported by the longitudinal record taken as a whole." (R. 18.) Although it might have been possible to reach a different conclusion based on the record, it is not the Court's job to weigh the evidence anew, but rather to evaluate whether the ALJ's conclusions were reasonable.

*See Robinson*, 956 F.2d at 838.  The Court does so here, and finds the ALJ's opinion was well-reasoned and supported by substantial evidence.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment [Doc. No. 12] be **DENIED**; and

2. Defendant's Motion for Summary Judgment [Doc. No. 14] be **GRANTED**.


Dated:  June 1, 2020               s/ *Hildy Bowbeer*
                                   HILDY BOWBEER
                                   United States Magistrate Judge